# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CAROLYN A., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 20-CV-00570-CDL ) |
| KILOLO KIJAKAZI,[1] Acting Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the undersigned **affirms** the Commissioner's decision denying benefits.

## Standard of Review

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any

---

[1] Effective July 9, 2021, pursuant to Federal Rule of Civil Procedure 25(d)(1), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the Court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## **Procedural History**

Plaintiff filed an application for social security disability benefits and supplemental social security income on February 15, 2019. (R. 228). Plaintiff alleges she became disabled due to neck and back pain, autism, hypermobility, asthma, allergies, gastroesophageal reflux, sensory processing disorder, depression, and PTSD. (R. 260).

Plaintiff was fifty-one years old on the alleged onset date of February 1, 2017. Prior to the onset date, Plaintiff worked as a merchandiser. (R. 261). The Social Security Administration denied Plaintiff's application on initial review and on reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ).

The ALJ held a video hearing on March 9, 2020. Testimony was given by Plaintiff and a Vocational Expert (VE). On April 14, 2020, the ALJ issued a decision denying disability benefits. (R. 12). On September 9, 2020, the Appeals Council denied Plaintiff's request for review, which rendered the ALJ's decision the agency's final decision. (R. 1). Accordingly, the Court has jurisdiction to review the ALJ's April 14, 2020 decision under 42 U.S.C. § 405(g).

## The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her previous work.

3

The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084. If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id*.

Here, the ALJ determined at step one that Plaintiff engaged in substantial gainful activity from February 1, 2017 to February 28, 2017.  (R. 18).  There are no earnings reported for Plaintiff after 2017; therefore, the ALJ found that there has been a continuous 12-month period during which the Plaintiff did not engage in substantial gainful activity since the alleged onset date.  *Id.*  At step two, the ALJ determined that Plaintiff has the following severe impairments: hypermobility of the joints, right shoulder impairment status post-injury, autism spectrum disorder, depression, anxiety, and post-traumatic stress disorder (PTSD).  *Id.*  The ALJ also found that Plaintiff's impairments of side effects of medication--including dizziness and nausea--are non-severe, as her medications were not properly regulated and Plaintiff failed to adhere to medical advice of not taking medication that caused stomach issues.  *Id.*  At step three, the ALJ found that Plaintiff's physical and mental impairments do not meet or equal the criteria for any listing. (R. 19). The ALJ specifically noted Plaintiff's physical impairments in connection with Listing 1.00 (Musculoskeletal System) and Listing 1.02 (major dysfunction of a joint(s) due to any cause).  *Id.*

With regard to mental impairments, the ALJ found that Plaintiff's impairments do not meet or medically equal the criteria of Listings 12.04 (Depressive, bipolar, and related disorders), 12.06 (Anxiety and obsessive-compulsive disorders), and 12.15 (Trauma and stressor-related disorders). *Id.* The ALJ discussed application of the "paragraph B" criteria—four areas of mental functioning used to determine whether a claimant's mental impairments functionally equal a listing. (R. 19-22; *see* 20 C.F.R. § 404 Subpt. P App'x 1). To satisfy the paragraph B criteria, a claimant's mental impairments must result in at least one extreme or two marked limitations in four areas of functioning. 20 C.F.R. § 404 Subpt. P App'x 1. A marked limitation means that the claimant's functioning in the area independently, appropriately, effectively, and on a sustained basis is seriously limited. *Id.* An extreme limitation means the inability to function independently, appropriately, or effectively, and on a sustained basis. *Id.*

Here, the ALJ found that Plaintiff has a moderate limitation in each of the four paragraph B domains: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 19-21). Because Plaintiff does not have at least one extreme or two or more marked limitations, her mental impairments do not meet or medically equal the criteria of the Listings. (R. 22). Finally, the ALJ also addressed the "paragraph C" criteria for "serious and persistent mental disorders," *see* Listing 12.00A(2)(c), and determined that they are not satisfied. *Id.* In accordance with these findings, the ALJ proceeded to step four.

At step four, the ALJ determined that Plaintiff has the RFC

> to lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently. She is able to stand and/or walk at least six hours in an eight-hour workday and sit at least six hours in an eight-hour workday. She should avoid work above the shoulder level. She should work in a temperature-controlled environment (as controlled as an ordinary Wal-Mart). She is able to perform simple, repetitive tasks. She occasionally is able to interact with co-workers and supervisors. She should not work with the public.

*Id*. In making his finding, the ALJ considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and SSR 16-3p. *Id.* The ALJ also considered medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 C.F.R. § 404.1520c and 416.920c. *Id.*

Citing the VE's testimony as to a hypothetical person with Plaintiff's RFC, the ALJ found that Plaintiff is unable to perform her past relevant work. (R. 33). Accordingly, the ALJ proceeded to step five. Based on the VE's testimony as to a hypothetical person with Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff can perform the requirements of representative occupations, including:

> ***Silver wrapper***, light exertion, unskilled, specific vocational preparation (SVP) level 1, DOT # 318.687-018, with 34,627 jobs existing in the national economy;
>
> ***Hand packer***, light exertion, unskilled, SVP level 2, DOT # 559.687-074, with 81,905 jobs existing in the national economy; and
>
> ***Collator operator***, light exertion, unskilled, SVP 2, DOT # 208.685-010, with 59,419 jobs existing in the national economy.

(R. 34). Accordingly, the ALJ concluded at step five that Plaintiff is not disabled. (R. 35).

6

### Plaintiff's Arguments

Plaintiff argues that the ALJ's mental RFC determination is not supported by substantial evidence, as he failed to include the proper limitation in his mental RFC assessment for Plaintiff's social interaction impairments.[2] The Commissioner contends that the ALJ's mental RFC determination adequately addresses Plaintiff's limitations, is based on medical evidence in the record, and is supported by substantial evidence.

### Discussion

Plaintiff argues that the ALJ's mental RFC determination is not supported by substantial evidence and is inconsistent with the record as a whole. Specifically, Plaintiff argues the ALJ failed to include a limitation for social interaction with coworkers and supervisors that is consistent with prior administrative medical findings and medical opinions of Plaintiff's medical providers. In support, Plaintiff cites evidence in the record that she had significant difficulties sustaining appropriate social interactions or completing tasks when social interactions were necessary. Plaintiff's brief cites the following examples: significant anxiety, especially in public (citing R. 664); poor social skills (citing R. 663); problems with social cues (citing R. 654); significant symptoms of anxiety and social withdrawal (citing R. 634); angry mood with aggressive behaviors (citing R. 616-17); struggles to be around others because she will blurt things out at people (citing R. 608); and excessive motor activity and admitted to believing people were against her

---

[2] Plaintiff's challenges in this appeal relate only to the ALJ's mental RFC determination. (*See* Pl.'s Br., Doc. 18 at 6-7). Accordingly, this opinion focuses on the relevant evidence relating to Plaintiff's mental impairments.

(citing R. 329). (*See* Doc. 18, p. 7). As Plaintiff's arguments relate to how the ALJ weighed the medical evidence when assessing the Plaintiff's mental RFC, the discussion below addresses the ALJ's treatment of the prior administrative medical findings and medical opinions in the record.

## Mental RFC Determination

### A. Prior Administrative Findings

Plaintiff asserts the ALJ ignored the prior administrative medical findings of state agency reviewing experts Debby Doughty, Ph.D. and Gary Lindsay, Ph.D., which support a more restrictive RFC limitation for social interaction with coworkers and supervisors. In support, Plaintiff cites the opinion of Dr. Doughty that Plaintiff could "relate to supervisors and peers on a superficial work basis." (*See* Pl.'s Br., Doc. 18 at 10) (citing R. 84). Plaintiff also cites the opinion of Dr. Lindsay that Plaintiff would do best in a setting where she could work "mostly alone." *Id.* (citing R. 122). Plaintiff argues the ALJ's limitation of "occasional" social interaction is less restrictive than the "superficial" social interaction limitation opined by Dr. Doughty and the opinion of Dr. Lindsay that she should work "mostly alone." Further, Plaintiff contends that while the ALJ found the prior administrative medical findings of Dr. Doughty and Dr. Lindsay persuasive and consistent with medical evidence in the record, he nonetheless assessed a social interaction limitation that was less restrictive and inconsistent with the findings he found persuasive.

The ALJ's decision must articulate how he considered the medical opinions or prior administrative medical findings from each medical source. 20 C.F.R. § 404.1520c(b)(1).[3] The most important factors for the ALJ to consider are supportability and consistency, and the ALJ's decision must explain how he considered those factors in determining persuasiveness of a medical source's medical opinions or prior administrative medical findings. *Id*. § 404.1520c(b)(2).[4] In his decision, the ALJ cites the opinion of Dr. Doughty that Plaintiff "could perform simple tasks with routine supervision," she "could relate to supervisors and peers on a superficial work basis," she "could not relate to the general public," and she "could adapt to a work situation." (R. 31). The ALJ also cites the opinion of Dr. Lindsay that Plaintiff "would have difficulty with interpersonal relations due to her mental condition and would perform better in jobs with limited requirements to interact with co-workers," she "would not interact well with the public," and she "could work with normal supervision in a setting where the claimant could work mostly alone." *Id*.

The opinions of Dr. Doughty and Dr. Lindsay clearly reflect that Plaintiff should be limited in her interactions with coworkers and supervisors and should have no interaction with the general public. The ALJ states he found the opinions of Dr. Doughty and Dr. Lindsay persuasive and consistent with the evidence in the record. *Id.* The ALJ explained,

---

[3] For claims filed on or after March 27, 2017, such as Plaintiff's claim here, the Commission does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinions." 20 C.F.R. § 404.1520c(a).

[4] The ALJ must also consider the medical source's relationship with the claimant, specialization, and other factors, but the ALJ's decision is not required to specifically address those additional factors. *Id*. § 404.1520c(c).

9

based on factors of consistency and supportability, why he found the opinions of Dr. Doughty and Dr. Lindsay persuasive. As such, the ALJ agreed that Plaintiff's social interaction impairments require additional limitations, but those limitations are not disabling. Accordingly, the ALJ included limitations in Plaintiff's mental RFC that she is only able to occasionally interact with coworkers and supervisors and she should not work with the public. (R. 22).

To support the assessment for a limitation of "occasional" social interaction, the ALJ cites Plaintiff's own statements and treatment records from her other mental health providers. Specifically, the ALJ notes, "[t]he claimant reported that she is independent in her activities of daily living and able to maintain her household," and "[t]he claimant indicated that she did not have episodes that required inpatient hospitalization." (R. 31). The ALJ further notes that Plaintiff's Adult Function Report dated February 28, 2019 states she "went to stores approximately three times per week". (R. 20). (citing Exhibit 5E, p.4). Plaintiff reported that "she sometimes went to the casino, but did not spend as long there as she had previously", and "she went to a genealogy meeting once a month and went to church monthly." *Id.* (citing Exhibit 5E, p.5). The ALJ notes that Plaintiff testified that "if she did not have to do any heavy lifting and did not have to work with customers, she could return to work." (R. 23). The ALJ also noted that Plaintiff testified that "[i]f she had her physical capabilities, she could work; but she was told that they could not fix her shoulder." *Id.*

Below is an excerpt of Plaintiff's hearing testimony in response to the ALJ's questioning:

> Q (by ALJ): "So, let's say if you didn't have – if your pain was fixed, you know, if you didn't have your physical problems, could you go back to stocking the shelves and doing the kind of work you used to do?
>
> A: If I could do the heavy lifting and I didn't have to work with the customers.

(R. 61).   The Plaintiff had similar responses to questions from her attorney:

> Q (by attorney): "So, if you were in more of an environment where you weren't--dealing with public, so, like, not the floor of a busy shopping mall, and not, you know, like at a cashier where you're dealing with customers, but you've got your own group of coworkers and supervisors that are kind of doing their own thing, you're not working teamwork-type tasks, you've all got your own duties as part of a bigger whole; do you think you'd be able to work in a setting more like that?  Or do you think that you would still have difficulties if we were to restrict you to that kind of setting?
>
> A: Well, I did that kind of stuff, but most of the time worked by myself, so I did better".
>
> Q: Do you have a reason to believe that you would not work well?  I understand that you prefer to work by yourself, but is there a reason that wouldn't be able to work in the setting I've described?
>
> A: If all my physical capabilities were back, I probably could if it was a, you know, decent environment and stuff, but they've told me that they can't fix things like my shoulder and my back. You know, I haven't seen any light at the end of the tunnel.

(R. 62-63). The ALJ's characterization of Plaintiff's testimony is consistent with her hearing testimony. Further, Plaintiff's testimony indicates that she finds her physical impairments, and not her mental limitations, are the deterrents preventing her return to work.

The ALJ's RFC assessment is further supported by and consistent with treatment records from Larry Gantt, LPC.  For example, the ALJ cited the August 5, 2019 counseling session with Counselor Gantt where he reported the "claimant's mood was euthymic, her affect was appropriate, her attention span was good, and her thought process was linear." (R. 28-29) (citing Exhibit 12F, p.43).  Counselor Gantt also noted that Plaintiff reported that her moods had been "okay," and she had participated in fun activities with a friend. *Id.*  The ALJ noted the January 27, 2020 counseling session with Counselor Gantt again reported that Plaintiff's mood was euthymic, her affect was appropriate, her attention span was good, and her thought process was linear.  (R. 29) (citing Exhibit 12F, p. 23). Counselor Gantt also noted that Plaintiff reported her moods had been "pretty good" and she was able to go to a concert with a friend. *Id.*

Despite using different terminology, the ALJ's RFC assessment for a limitation of "occasional" social interaction is generally consistent with the opinions of Dr. Doughty and Dr. Lindsay and supported by substantial evidence in the record.  Further, "exact correspondence between a medical opinion and the mental RFC is not required." *Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (citing *Chapo v. Astrue,* 682 F.3d 1285, 1288 (10th Cir.2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question," because "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record" (alteration and internal quotation marks omitted))). Moreover, the undersigned finds the mental RFC determination is supported by substantial evidence, as evidenced by Plaintiff's statements and the medical evidence outlined above.

12

Therefore, the undersigned finds the ALJ evaluated the prior administrative medical findings as the new regulations require. Thus, the Court finds no reversible error regarding the ALJ's consideration of the prior administrative medical findings.

### B. Medical Opinion of Peggy Beck, LSCSW

Plaintiff argues the ALJ improperly evaluated the medical opinion of therapist Peggy Beck which supports a more restrictive social interaction limitation than accounted for in the mental RFC assessment. Plaintiff focuses on the March 14, 2019 medical source statement (MSS) of Counselor Peggy Beck, which opined that Plaintiff "was markedly limited in her ability to: work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and ask simple questions or request assistance." (*See* Pl.'s Br., Doc. 18 at 4) (citing R. 327). Ms. Beck also opined that Plaintiff "was extremely limited in her ability to: interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and respond appropriately to changes in the work setting." *Id*.

In his decision, the ALJ considered the opinion of Counselor Beck and found it to be unpersuasive. (R. 31-32). Specifically, the ALJ found the extreme limitations assessed by Counselor Beck were not consistent with her own treatment and progress notes, treatment notes from other mental health providers, or Plaintiff's own testimony. (R. 32). For

13

example, the ALJ cited the December 7, 2018 appointment where Counselor Beck stated the Plaintiff was oriented, cooperative, and had adequate grooming and hygiene. (R. 26). (citing Exhibit 14F, p. 24). Counselor Beck also stated that Plaintiff's attention was adequate, her thought content was congruent, her memory was intact, and her motor activity was normal/calm. *Id.* Counselor Beck described Plaintiff's mood as angry and her affect was congruent, and her thought content was congruent with mood and circumstance; however, Counselor Beck reported that Plaintiff's insight and judgment were normal. *Id.* The ALJ cited the March 11, 2019 therapy appointment with Counselor Beck which reported Plaintiff was oriented, had adequate grooming, was cooperative, mood was euthymic, and she made adequate eye contact. (R. 27). (citing Exhibit 14F, p.14). Counselor Beck also reported Plaintiff's impulse control was stable, and her insight and judgment were normal. *Id.* (p. 15). The ALJ cited the March 25, 2019 therapy session with Counselor Beck which reported Plaintiff was neatly dressed and groomed, her attention was adequate, she was oriented, cooperative, her mood was euthymic, and she made adequate eye contact. *Id.* (p.12). Counselor Beck also reported Plaintiff's memory appeared congruent, her thought content was congruent with mood and circumstance and indicated her insight and judgment were normal. (R. 27-28). (citing Exhibit 14F, p. 12-13).

The Plaintiff's statements and mental examination records from Counselor Gantt, as outlined above, also support the ALJ's finding that Counselor Beck's opinion is not persuasive. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing

14

the evidence supporting [the] decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)). Here, the ALJ properly considered the opinion of Counselor Beck and explained why he found it unpersuasive due to the lack of supportability and consistency in the record. Further, even if the evidence could support a different finding, the Court cannot displace the agency's choice between two fairly conflicting views. *See Oldham v. Astrue,* 509 F.3d 1254, 1257–58 (10th Cir. 2007). Plaintiff's argument simply invites the Court to improperly re-weigh the evidence. *See Noreja*, 952 F.3d at 1178; *see also Lax*, 489 F.3d at 1084. Thus, the Court finds no reversible error regarding the ALJ's consideration of the opinion of Counselor Beck.

### C. Step Five

Plaintiff lastly argues that the VE testified that the inability for Plaintiff to be around coworkers or supervisors would erode the job base. (*See* Pl.'s Br., Doc. 18 at 12) (citing R. 69). The restriction that Plaintiff should have no interaction with coworkers or supervisors is not supported by the medical record. As outlined above, both Dr. Doughty and Dr. Lindsay opined that Plaintiff was only limited in her ability to be around coworkers or supervisors and neither doctor opined that she is unable to be around coworkers or supervisors altogether. Therefore, the Court finds this argument has no merit. Furthermore, the three jobs the VE found that Plaintiff was capable of performing at step

five require little social interaction.[5]  All three jobs have a people rating of 8, indicating "the lowest possible level of human interaction that exists in the labor force." *Lane v. Colvin*, 643 F. App'x 766, 770 (10th Cir. 2016).  Therefore, the Court finds the ALJ's findings at step five are supported by substantial evidence.

## Conclusion

The undersigned finds that the ALJ's decision is supported by substantial evidence based on the applicable legal standards.  Accordingly, the decision of the Commissioner finding Plaintiff not disabled is **affirmed.**

SO ORDERED this 21st day of December, 2021.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge

---

[5] According to Appendix B of the DOT, the fifth number of the nine-digit code reflects the job's relationship to people.  Dictionary of Occupational Titles, App. B—Explanation of Data, People, & Things, 1991 WL 688701.  The DOT rates the amount of interaction with people on a scale of 0–8, with 8 representing the lowest possible level of human interaction that exists in the labor force. That ranking describes the need to take instructions as only "[a]ttending to the work assignment instructions or orders of supervisor" with "[n]o immediate response required unless clarification of instructions or orders is needed." *Id.* Even more specifically, the DOT entries for silver wrapper, hand packer, and collator operator describe the amount of "[t]aking [i]nstructions" required as "[n]ot [s]ignificant."  DOT 318.687-018, 1991 WL 672757; DOT 559.687-074, 1991 WL 683797; DOT 208.685-010, 1991 WL 671753.  Thus, these job descriptions are consistent with Plaintiff's argument for "superficial" contact with supervisors and co-workers.